**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION AT MEMPHIS**

| | | |
|---|---|---|
| **KENNETH E. SAVAGE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 14-2057-STA-dkv** |
| | ) | |
| **FEDERAL EXPRESS CORPORATION** | ) | |
| **d/b/a FEDEX EXPRESS,** | ) | |
| **FEDEX CORPORATION** | ) | |
| **EMPLOYEES' PENSION PLAN,** | ) | |
| **FEDEX CORPORATION** | ) | |
| **RETIREMENT SAVINGS PLAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants Federal Express Corporation d/b/a FedEx Express, FedEx Corporation Employees' Pension Plan, and FedEx Corporation Retirement Savings Plan (collectively "Fed Ex")'s Motion for Summary Judgment (ECF No. 90) filed on August 5, 2015. Plaintiff Kenneth E. Savage has responded in opposition, and Defendants have filed a reply brief. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

### I. Factual Background

Defendants seek summary judgment on Plaintiffs' claims under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). Pursuant to Local Rule 56.1(a), Defendants have prepared a statement of facts "to assist the Court in

ascertaining whether there are any material facts in dispute."[1]  For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact.[2]  As the non-moving party, Plaintiff must respond to Defendants' statements of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed."[3]

Additionally, Plaintiff may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[4]  Where Plaintiff asserts that a genuine dispute of material fact exists, Plaintiff must support his contention with a "specific citation to the record."[5]  If Plaintiff fails to demonstrate that a fact is disputed or simply fails to address Defendants' statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motion.[6]  Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited

---

[1] Local R. 56.1(a).

[2] Fed. R. Civ. P. 56(c)(1).

[3] Local R. 56.1(b).

[4] Fed. R. Civ. P. 56(c)(2).

[5] Local R. 56.1(b).

[6] Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

materials" but has discretion to "consider other materials in the record."[7]  Plaintiff also has the opportunity to present a statement of additional facts, which Plaintiff contends are material and present a genuine dispute for trial.

## A. Plaintiff's Employment with FedEx and Military Service

The Court finds that there is no genuine dispute as to the following material facts, unless otherwise noted.  Plaintiff Kenneth E. Savage, Jr., is a former FedEx Senior Aircraft Mechanic who worked at FedEx's Memphis hub from August 2001 to September 20, 2012, the date his employment was terminated.  (Defs.' Statement of Undisputed Fact ¶ 1; Pl.'s Statement of Add'l Fact ¶ 1.)  Plaintiff received a number of awards during his tenure with FedEx, including "Bravo Zulu" awards and "Ruby" and "Diamond" awards from the Federal Aviation Administration.  (Pl.'s Statement of Add'l Fact ¶ 3.)  Plaintiff received performance review scores from his managers of seven out of a possible score of seven throughout his tenure with FedEx.  (*Id.* ¶ 4.; Defs.' Statement of Undisputed Fact ¶ 26.)  None of Plaintiff's FedEx managers ever issued him a disciplinary letter or performance improvement plan while he was employed at FedEx, even though he was once caught sleeping while on-the-clock.  (*Id.* ¶ 27; Pl.'s Statement of Add'l Fact ¶¶ 4, 6.)

Throughout Plaintiff's employment with FedEx, he was also a lieutenant in the United States Naval Reserves where he served as an aircraft maintenance officer.  (*Id.* ¶ 2; Defs.' Statement of Undisputed Fact ¶ 2.)  FedEx consistently allowed Plaintiff to take

---

[7] Fed. R. Civ. P. 56(c)(3).

time off to fulfill his military duties.  (*Id.* ¶ 28.)[8]  FedEx allowed Plaintiff to fly on FedEx cargo planes to a military site to perform his military drill duty in New Orleans.  (*Id.* ¶ 29.)  Plaintiff's managers also allowed Plaintiff to use FedEx computers to complete computer-based military training while Plaintiff was on-the-clock and receiving pay from FedEx.  (*Id.* ¶ 25.)

Plaintiff never heard any FedEx manager make a derogatory comment about his military status or military service.  (*Id.* ¶ 35.)[9]  Dana Jones, Plaintiff's manager from 2005 to 2008, was in the United States Marine Corp.  (*Id.* ¶ 36.)  Thomas Lott, Plaintiff's human resources advisor, served in the United States Navy Reserves.  (*Id.* ¶ 37.)  Maureen Patton, the managing director who upheld Plaintiff's termination at step 1 of his GFTP appeal, is a former second class petty officer in the United States Navy.  (*Id.* ¶ 38.)[10]

---

[8] Plaintiff does not dispute the fact that he was permitted to take time off. Plaintiff claims that Defendants discriminated against him, however, because he took time off to serve.

[9] Plaintiff alleges that in September 2011, his manager Troy Turnipseed assisted him with getting on a FedEx cargo plane to return from military leave in New Orleans. (*Id.* ¶ 34.)  During the process Turnipseed commented that Plaintiff's military commitments were "inconvenient." (*Id.*) According to Plaintiff, Turnipseed never made any other comments of this kind again. (*Id.*)

Defendants have filed a Motion in Limine (ECF No. 109) to exclude any evidence about this single remark from Turnipseed.  Plaintiff has responded to the Motion, stating that he does not oppose it.  Therefore, the Motion is **GRANTED**.  As such, the Court declines to consider the evidence about Turnipseed's remark as part of its analysis of Defendants' Motion for Summary Judgment.

[10] FedEx provides its employees with a grievance and appeals procedure known as the Guaranteed Fair Treatment Procedure ("GFTP").  (*Id.* ¶ 8.)  The process allows employees to appeal adverse employment actions that the employee thinks are unfair. The adverse employment action can be reviewed by three levels of FedEx management: (1) management review, (2) officer review, and (3) review by an Appeals Board.  The

**B. Plaintiff's Use of FedEx Reduced-Rate Shipping**

Under FedEx's reduced-rate shipping policy, FedEx employees, their spouses, and dependents are allowed to ship items via FedEx at a discount. (*Id.* ¶ 4.) During the entire time Plaintiff was employed at FedEx, the reduced-rate shipping policy prohibited FedEx employees from using their discount for any type of commercial benefit or commercial purpose not related to FedEx Express. (*Id.* ¶ 5.) The policy also prohibited employees from using their discount shipping privileges for any commercial enterprise or business, whether or not the business is for profit or non-profit. (*Id.*)[11] FedEx's acceptable conduct policy provides, in part, that "[v]iolation of guidelines and policy for employee reduced-rate shipping . . . may result in severe disciplinary action up to and including termination." (*Id.* ¶ 11.)

The FedEx People Manual is a personnel policy manual that contains all FedEx employment policies, including the acceptable conduct policy and the reduced-rate shipping policy. (*Id.* ¶ 2.) Plaintiff had access to and was familiar with the People Manual when he was employed at FedEx and knew where to look up a FedEx policy. (*Id.*) The People Manual was available to Plaintiff electronically through the FedEx intranet, though the parties dispute whether Plaintiff had access to a hard copy paper form

---

Appeals Board consists of the chief executive officer, the chief operating officer, the chief human resources officer, a senior vice president, and a vice president.

[11] Plaintiff admits the substance of this statement about the reduced-rate shipping policy but adds that the policy did not define the terms "commercial benefit" or "commercial purpose" or "business" until two days before Plaintiff shipped prohibited items. Plaintiff has simply asserted additional facts about the reduced-rate shipping policy. Plaintiff has not shown that a genuine dispute exists over the facts asserted by Defendants.

of the manual at the time of his termination. (*Id.*)[12] FedEx's Employee Handbook also contained summaries of FedEx's personnel policies, including FedEx's reduced-rate shipping policy and acceptable conduct policy. Plaintiff received copies of FedEx's Employee Handbook in August 2001, February 2002, and June 2006. (*Id.* ¶ 3; Pl.'s Statement of Add'l Fact ¶ 44.) Plaintiff has no reason to doubt having gone into the FedEx computer system and acknowledged his receipt of the 2011 Employee Handbook. (Defs.' Statement of Undisputed Fact ¶ 3.)[13]

FedEx's written reduced-rate shipping policy had been in effect during the entire time Plaintiff was employed at FedEx. (*Id.* ¶ 6.) Plaintiff signed up for his reduced rate shipping account in 2005 or 2006. (*Id.*) When an employee signs up for a discount shipping account, he has to agree to the terms and conditions of the reduced-rate shipping policy and acknowledge an understanding that improper use or abuse of the privilege may lead to termination of employment. (*Id.* ¶ 7a.) Plaintiff adds that the policy allowed employees to use the discount for their "personal benefit." (Pl.'s Statement of Add'l Fact ¶ 29.) Plaintiff further notes that FedEx revised the policy on September 2, 2012, to explicitly prohibit employees from using the reduced-rate shipping privilege to ship

_____

[12] Plaintiff has asserted a number of other facts in his response to Defendants' statements about the manual. However, the Court finds that none of the additional facts asserted by Plaintiff shows that a genuine dispute exists over Defendants' claims about the manual. Plaintiff's are merely additional facts he seeks to bring before the Court. But this is the purpose of allowing Plaintiff to present his own statement of additional facts. Plaintiff has filed a statement of additional facts, and the Court considers them here.

[13] Plaintiff disputes the fact that he received the 2011 manual. However, Plaintiff testified at his deposition that if FedEx records showed he received it, he must have. Plaintiff added that he did not specifically remember doing so. (Savage Dep. 238:17-239:4, ECF No. 97-6.) The Court finds that this testimony does not create a genuine issue of material fact on this point.

merchandise sold on eBay. (*Id.* ¶¶ 26, 29.) According to Plaintiff, FedEx did not give him notice of the September 2, 2012 revision to the policy. (*Id.* ¶ 28.)[14] On September 4, 2012, Plaintiff's wife shipped one or two household items she had sold on eBay and used her husband's employee discount to ship them. (*Id.* ¶ 30.)

Plaintiff and his wife sold various items on commercial websites like Craigslist and eBay and then shipped the items to their customers using Plaintiff's employee shipping discount. (Defs.' Statement of Undisputed Fact ¶ 9.) When they listed the items for sale, Plaintiff and his wife would advertise free shipping. (*Id.*) Plaintiff and his wife sold various items using his employee shipping discount, including at least half a dozen saddles, toys, bridals, horse tack, head pieces, headstalls, breast collars, blankets, musical instruments, dolls, tool boxes, kitchen appliances, show clothing, car tires, a workout set, and a Stratocaster. (*Id.* ¶ 10.) Some items sold for hundreds of dollars; for example, a saddle listed on Craigslist sold for over $400. (*Id.*)

FedEx's security department routinely investigates whether employees abuse their discount shipping privileges. (*Id.* ¶ 13.) In 2012, FedEx's legal department generated a quarterly audit, identifying the ten FedEx employees who had used their employee discount the most. (*Id.*)[15] The legal department then sent the audit list to the security department for investigation into each listed employee's shipping history to determine if the employee was abusing the reduced-rate shipping policy. (*Id.*) Plaintiff used his reduced-rate shipping discount ninety (90) times during the period between March 2012

---

[14] Plaintiff claims that FedEx revised the policy fourteen times during Plaintiff's tenure with the company. (Pl.'s Statement of Add'l Fact ¶ 27.)

[15] Defendants add that the current auditing procedure differs and identifies the top thirty employees. (Defs.' Statement of Fact ¶ 13.) The Court notes this fact for the record but finds that it is not relevant to the issues presented at summary judgment.

and August 2012 and appeared on the automatically-generated audit for that quarter because of his high volume of shipments. (*Id.* ¶ 14.) Plaintiff disputes that he was on the initial audit list for that quarter. According to Plaintiff, his name came up as part of an "additional pull" because other employees already under investigation for abuse of the reduced-rate shipping policy came up in the initial top ten. (Pl.'s Resp. to Defs.' Statement ¶ 14.) Plaintiff adds that he appeared on the additional pull at a time close in proximity to his protected military service. (*Id.*)

Patricia Williams is the senior security specialist who investigated Plaintiff's use of his reduced-rate shipping privilege. (Defs.' Statement of Undisputed Fact ¶ 15; Pl.'s Statement of Add'l Fact ¶ 33.) Williams's security work group is assigned to employees in the Memphis Hub, including Plaintiff's avionics line. (Defs.' Statement of Undisputed Fact ¶ 15.) As part of her investigation, Williams reviewed six months of Plaintiff's shipping history, including the volume of shipments, whether the shipments were domestic or international, the names of the shipper using the discount, and the names of the recipients. (*Id.* ¶ 16.)[16] Williams then interviewed Plaintiff who admitted that he was aware of the reduced-rate shipping policy and that he and his wife sold items on eBay and Craigslist using his employee shipping discount. (*Id.* ¶ 17.)

During the interview, Plaintiff told Williams that his wife would buy products, such as saddles and bridles, from sellers on Craigslist or some other on-line auction, fix up the merchandise for resale, list the goods for resale online, and ship the merchandise

---

[16] Plaintiff does not dispute that Williams's investigation included a 6-month look-back at Plaintiff's use of the discount. Plaintiff asserts that the testimony of Sean Driver was inconsistent. Plaintiff cites ten pages of the transcript of Driver's deposition but does not state how the testimony contradicts Defendants' statement about Williams's investigation. Read in context, Driver did, in fact, testify that an investigation would consider a six-month history of employee shipping.

to buyers using Plaintiff's employee discount. (*Id.*) Plaintiff told Williams that his wife did this to "maintain the horses" they owned. (*Id.*) Plaintiff signed written statements to this effect and submitted them to Williams. (*Id.*) Williams gave Plaintiff an opportunity to review the statements for accuracy. (*Id.*) Plaintiff submitted a revised written statement to security, human resources, his senior manager, and his managing director a couple of days after Williams interviewed him. (*Id.*)[17] According to Plaintiff, the entire interview and preparation of his statement took about an hour or less. (Pl.'s Statement of Add'l Fact ¶ 35.) At the conclusion of the interview, Plaintiff was given a letter, suspending him with pay pending an investigation and a copy of the reduced rate shipping policy revised as of September 4, 2012. (*Id.* ¶¶ 36, 37.) The suspension came 34 days after Plaintiff had completed military service and less than a month after he complained to the FedEx Retirement Service Center about his retirement benefits. (*Id.* ¶ 39.)

Williams concluded that Plaintiff had violated the reduced-rate shipping policy by selling merchandise and shipping it to buyers using his employee discount. (Defs.' Statement of Undisputed Fact ¶ 18.) At the time of Williams's investigation and interview with Plaintiff, Williams was not aware that Plaintiff was in the military or had made complaints about how FedEx treated military employees. (*Id.* ¶ 20.) Plaintiff's military status was not discussed during Williams's interview. (*Id.*) Williams first

---

[17] Plaintiff again disputes the facts as stated, not by showing that the evidence is in dispute but by asserting additional facts. Specifically, Plaintiff adds that he did not believe his use of reduced-rate shipping for items he and his wife sold online violated the policy. The Court notes Plaintiff's position on his use of the discount and considers this issue as part of its analysis of the parties' arguments at summary judgment.

learned that Plaintiff was in the military when her deposition was taken in this lawsuit on February 12, 2015. (*Id.*)

Sean Driver, Defendants' senior manager of corporate security, agreed with Williams's conclusion that Plaintiff had violated the policy. (*Id.* ¶ 18.) After Williams completed her investigation of Plaintiff's potential violation of the reduced-rate shipping policy, she provided the information and her conclusions to Thomas Lott, the human resources advisor for aviation mechanics in the Memphis Hub. (*Id.* ¶ 19.) Lott was not aware of any FedEx employee who had violated the reduced-rate shipping policy but was not terminated for the violation. (*Id.* ¶ 24.) Lott forwarded the results of the investigation to Maureen Patton, the managing director. (*Id.*)

Plaintiff was terminated on September 20, 2012, because FedEx security determined that he had violated the reduced-rate shipping policy. (Pl.'s Statement of Add'l Fact ¶ 40; Defs.' Statement of Undisputed Fact ¶ 24.) Lott, Plaintiff's human resources advisor, concluded that Plaintiff's termination would be consistent with the interpretation of FedEx's reduced-rate shipping policy and consistent with the application of FedEx's acceptable conduct policy, though the parties disagree over whether Lott was actually a decision-maker in Plaintiff's termination. (*Id.* ¶ 22.) Plaintiff was informed that his employment was terminated because he violated the reduced-rate shipping policy. (*Id.*) Plaintiff notes that FedEx terminated his employment 42 days after Plaintiff had completed military service and a little more than a month after he complained to the FedEx Retirement Service Center about his retirement benefits. (*Id.* ¶ 41.) Plaintiff believes that he was terminated for exercising rights protected under USERRA.

Plaintiff's manager, Troy Turnipseed, was not involved in the investigation as to whether Plaintiff violated the reduced-rate shipping policy. (*Id.* ¶ 21.)[18] After the investigation, Turnipseed learned about the decision to terminate Plaintiff's employment and drafted the termination letter. (*Id.*) When Plaintiff was terminated, Turnipseed was not aware of any employee who had violated FedEx's reduced-rate shipping policy but was not terminated for the violation. (*Id.* ¶ 23.) Plaintiff is the only employee working under Turnipseed who was found to have violated the reduced-rate shipping policy. (*Id.*) Turnipseed does not investigate potential violations of the reduced-rate shipping policy; the security department does. (*Id.*)[19]

Cliff Cunningham, Chris Jeter, and Matt Smith were all in Plaintiff's work group and like Plaintiff served in the military while employed at FedEx. (*Id.* ¶ 30.) Cunningham, Jeter, and Smith all remain employed at FedEx as senior aviation mechanics and receive annual wage increases and full benefits. (*Id.*) Cunningham has made various complaints to FedEx management about how FedEx treated employees who serve in the military. (*Id.* ¶ 31.) Plaintiff adds that Cunningham believes his military service has resulted in FedEx not correctly crediting his retirement accounts. (Pl.'s Resp. to Defs. Statement of Fact ¶ 30.)

Plaintiff asserts that another non-protected FedEx employee Pablo Melgar violated the reduced-rate shipping policy but was not terminated. (Pl.'s Statement of

---

[18] Plaintiff disputes this fact by citing his own deposition testimony and Williams's testimony. The Court finds that none of the cited materials creates a genuine dispute about whether Turnipseed was involved in the decision to terminate Plaintiff's employment.

[19] Plaintiff does not dispute these facts. He does argue that the facts are not dispositive in this case.

Add'l Fact ¶ 43.)  According to Plaintiff, Melgar like Plaintiff was an aircraft mechanic and worked in Plaintiff's group.  (*Id.*)[20]  Other non-protected FedEx employees also violated the reduced-rate shipping policy but received as discipline only warning letters. (*Id.*)[21]

## C. Calculation of Plaintiff's Pension Benefits

Plaintiff participated in the FedEx Corporation Employees' Pension Plan ("pension plan").  (Defs.' Statement of Undisputed Fact ¶ 40.)  The pension plan is a defined benefit plan that covers all eligible and participating employees and is not an individual account plan or a 401(k) plan.  (*Id.*)  Until January 2014, Mercer, an actuarial and retirement benefits administration firm, calculated and administered FedEx retirement benefits under the pension plan. (*Id.* ¶ 41.)  Mercer is a separate entity from FedEx. (*Id.* ¶ 33.)  As part of its duties, Mercer calculated Plaintiff's retirement benefits. (*Id.*)  In January 2014, FedEx changed from Mercer to AON Hewitt, another third-party company that calculates and administers FedEx employees' retirement benefits.  (*Id.* ¶ 42.)

---

[20] To support this statement of fact, Plaintiff cites his own deposition testimony and the testimony of Joffre Disabatino.  Defendants have filed a Motion in Limine (ECF No. 107) to exclude any testimony from Plaintiff or Disabatino concerning comparator employees, arguing that Plaintiff and Disabatino lack personal knowledge of the circumstances surrounding the comparator employees' violations of the reduced-rate shipping policy.  Plaintiff has responded to the Motion in Limine (ECF No. 115) and conceded that he has no opposition to it.  Plaintiff states that he will introduce the testimony through another witness named Scott Ogden.  Plaintiff has not shown what Ogden's testimony will be or shown how that testimony will create a genuine issue of material fact for trial.  The Court addresses this critical omission in greater depth below.

[21] Plaintiff has attached the letters to this summary judgment brief.  Defendants object to the introduction of the actual warning letters as inadmissible hearsay.  The Court addresses the probative value of the letters below.

Plaintiff alleges that in late May or early June 2012, prior to his termination, he notified his manager, human resources advisor, and individuals in FedEx's benefits department about a discrepancy in his pension calculations. (Defs.' Statement of Undisputed Fact ¶ 32.)[22] Plaintiff also raised the issue with the FedEx Retirement Service Center, which is not a FedEx entity. (*Id.* ¶ 33.) The FedEx Retirement Service Center is a specific group of employees within Mercer. (*Id.*) The individuals in the FedEx Retirement Services Center were employees of Mercer, not FedEx. (*Id.*) Plaintiff adds that he continued to make complaints into July 2012. (Pl.'s Statement of Add'l Fact ¶¶ 10-12.) According to Plaintiff's summary judgment affidavit, he raised the issue of the correct calculation of his retirement benefits as late as August 2012. Plaintiff contacted the FedEx Retirement Benefits Center just before he took military leave of absence on July 29, 2012. (*Id.* ¶ 14.) Plaintiff returned from military service on August 10 or 11, 2012. (*Id.* ¶ 15.)

Following his termination, Plaintiff filed a complaint with the Department of Labor Veterans' Training Service ("DOL-VETS"), and DOL-VETS conducted an investigation into Plaintiff's claims. (*Id.* ¶ 51.) Plaintiff testified at his deposition that the DOL investigator concluded that Plaintiff's USERRA claim had merit, though

---

[22] Plaintiff asserts a number of additional facts concerning this issue but does not actually dispute Defendants' statement that Plaintiff raised the issue in 2012. Plaintiff further claims that he complained about FedEx policies regarding shift bids and overtime and the impact of those policies on FedEx employees serving in the National Guard. (Pl.'s Statement of Add'l Fact ¶ 8.) Plaintiff claims that on a separate occasion he complained to Turnipseed that FedEx did not cancel his health benefits as he had requested and that as a result Plaintiff lost income. (*Id.*) The Court notes these additional facts for the record.

Defendants dispute this claim.  (*Id.*)[23]  During the investigation, Arris Reddick Murphy, a lawyer in FedEx's tax and employee benefits law department, conceded in a March 13, 2013 letter that "[u]pon review, we discovered that due to the manner in which Lt. Savage's information was entered into the system, the imputed earnings for certain short-term leaves were not captured for pension purposes." (*Id.* ¶ 47.)  According to Plaintiff, FedEx did not calculate his retirement benefits accurately on three separate occasions. (*Id.* ¶ 48.)

At that point FedEx recalculated Plaintiff's imputed earnings for each of the periods of time he was on military leave from May 20, 2002, through September 21, 2012.  (*Id.* ¶ 43.)  Amy Hutchison, who was then an advisor in Retirement Plans for

---

[23] Plaintiff cites for support his own deposition testimony where he testified that he filed a complaint with the Department of Labor following his termination and the agency determined that his claim of discrimination on the basis of military service "had merit."  Plaintiff has also attached a letter from the DOL investigator Wendy D. Harrison closing the DOL investigation and advising Plaintiff of his additional remedies.  The letter states that "the evidence reviewed during the course of our investigation supports your allegations that your military service was a motivating factor in your termination from FedEx."  DOL letter, Mar. 22, 2013 (ECF No. 99-11).

Defendants object to the relevance of Plaintiff's testimony about the results of the DOL investigation and argue that the letter is unfairly prejudicial.  Defendants have not addressed the DOL letter.  The Court notes the proof and Defendants' objection for the record.  The Court finds that Plaintiff's testimony and the DOL letter have limited relevance because the DOL letter does not actually recite any of the evidence the DOL reviewed, only its somewhat vague conclusion that the evidence "supported" Plaintiff's claims about his termination.  Without more, the letter and Plaintiff's characterization of the DOL's investigation does not actually make any "fact more or less probable than it would be without the evidence."

Defendants have also filed a Motion in Limine (ECF No. 113) to exclude the letter, as well as the related DOL investigation report and any testimony from Ms. Harrison.  Because none of the parties actually rely on the DOL investigative report or the testimony of Ms. Harrison as evidence at summary judgment, the Court need not consider the admissibility of this evidence to decide Defendants' Motion for Summary Judgment.  Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

FedEx, performed the recalculation of Plaintiff's imputed earnings. (*Id.*) When calculating Plaintiff's compensation for the periods of time he was on military leaves of absence, FedEx used a 12-month look-back methodology because his rate of pay was not reasonably certain due to shift differential pay, overtime pay, and premium license pay he had received in prior pay periods. (*Id.* ¶ 44; Pl.'s Statement of Add'l Fact ¶ 7.) To determine Plaintiff's earnings for the periods of time he was on military leaves of absence, FedEx calculated his average rate of pay during the 12-month look-back period. (Defs.' Statement of Undisputed Fact ¶ 45.) FedEx's records show that between May 20, 2002 and September 21, 2012, Plaintiff was on military leave for a total of fifty-five (55) separate periods of time. (*Id.* ¶ 46.) Thus, FedEx calculated fifty-five (55) separate average rates of pay related to those periods of time. (*Id.*)

In order to calculate Plaintiff's average rate of pay, FedEx reviewed his actual pensionable earnings, which included, but were not limited to, base pay, overtime pay, shift differential pay, premium license pay, and vacation and sick pay, for each 12-month look-back period. (*Id.* ¶ 47.) In addition to reviewing Plaintiff's actual pensionable earnings, FedEx reviewed his total hours paid for each 12-month look-back period. (*Id.* ¶ 48.) FedEx used the following mathematical equation to determine Plaintiff's average rate of pay: (Total Pensionable Earnings/Total Hours Paid) = Average Rate of Pay. (*Id.* ¶ 49.) FedEx then used the average rates of pay to calculate imputed earnings to Plaintiff for each period of time he was on military leave in order to determine his pensionable earnings. (*Id.* ¶ 50.)

To determine Plaintiff's imputed earnings related to military leave, FedEx reviewed his time records and work schedule for all fifty-five (55) periods of military

leave between May 2002 and September 2012.  (*Id.* ¶ 51.)  Plaintiff's work schedules contained the number of hours he would have worked on each day he was on a military leave of absence.  (*Id.*)  Based on its review of Plaintiff's time records and work schedule, FedEx determined that Plaintiff had a total of 2,166 hours of military leave associated with days he was scheduled to work for FedEx but was absent to due to military leave.  (*Id.* ¶ 52.)  With the exception of days Plaintiff was not scheduled to work, FedEx's records show that all leave in Plaintiff's naval records is accounted for as either a military leave of absence or a paid work day, including but not limited to, vacation, sick leave, personal leave, floating holidays, and bereavement.  (*Id.* ¶ 53.)

After determining the hours of military leave associated with Savage's scheduled work days, FedEx multiplied the total hours of military leave for each period by the corresponding average rate of pay for that period.  (*Id.* ¶ 54.)  FedEx used the following mathematical equation: (Average Rate of Pay/Imputed Hours of Military Service) = Imputed Earnings.  (*Id.*)  FedEx used the imputed earnings calculation for each of the fifty-five (55) periods Plaintiff was on a military leave of absence and calculated Plaintiff's total imputed earnings for the periods he was on military leave as $92,463.50. (*Id.* ¶ 55.)  After recalculating Plaintiff's imputed earnings in October 2013, FedEx provided the imputed earnings to Mercer, the actuarial and retirement benefits administration firm, to calculate and adjust his retirement benefits under the Pension Plan.  (*Id.* ¶ 56.)  Plaintiff received notice of his adjusted retirement benefits in October 2013.  (*Id.* ¶ 57.)[24]

---

[24] Plaintiff asserts that FedEx has not correctly calculated his retirement benefits. For the reasons discussed more fully below, the Court finds that no genuine dispute exists

## II. The Parties' Arguments

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's USERRA claims. First, Plaintiff cannot establish that his military service was a substantial or motivating factor in his termination. According to Defendants, Plaintiff has no proof to support any of the relevant showings. Plaintiff cannot demonstrate temporal proximity between his complaints about his retirement benefits in June 2012 and his termination in September 2012. Plaintiff cannot prove that Defendants offered inconsistent reasons for his termination. FedEx's only stated reason for terminating Plaintiff was his violation of the reduced-rate shipping policy. Plaintiff has no proof that FedEx management expressed hostility to service members. The security department investigator who determined that Plaintiff had violated the shipping policy had no knowledge of Plaintiff's military service or prior complaints about his retirement benefits. And Plaintiff has no evidence of similarly situated, non-protected employees receiving less discipline for comparable violations of the reduced-rate shipping policy. For these reasons Defendants argue that Plaintiff cannot make out any of the elements of a prima facie claim of discrimination under USERRA.

Even if Plaintiff could establish a prima facie claim, Defendants contend that FedEx had legitimate nondiscriminatory reasons for terminating Plaintiff. Plaintiff was very familiar with the reduced-rate shipping policy. Regardless of the fact that FedEx revised the policy to explicitly prohibit shipping merchandise sold on commercial websites, the policy had at all times prohibited shipping merchandise sold by the employee. There is no evidence that Defendants targeted Plaintiff for investigation

---

on the question of whether FedEx has now calculated Plaintiff's retirement benefits correctly.

because of his military service. Plaintiff's name appeared on an audit prepared in the normal course and came up on the audit due to the number of packages he shipped between March and August 2012. Plaintiff admitted during the investigatory interview that he and his wife had sold items and then used the shipping discount to ship them to customers. Defendants assert that even if Plaintiff disagreed with the FedEx's enforcement of its own policies or found the policies to be ambiguous, FedEx had a good faith belief that Plaintiff had violated the policies and reasonably applied its reduced-rate shipping and acceptable conduct policies when it terminated Plaintiff.

Defendants further argue that several of the relevant decision-makers were themselves former service personnel and therefore members of Plaintiff's protected class. The evidence shows that FedEx consistently accommodated Plaintiff's requests for military leaves of absence. Defendants continue to employ similarly situated military personnel, including Cliff Cunningham who like Plaintiff made complaints about FedEx's calculation of retirement benefits for service members. Without evidence to establish his prima facie case and in light of Defendants' proof of legitimate reasons for Plaintiff's termination, Defendants argue they are entitled to judgment as a matter of law on Plaintiff's USERRA claim.

Finally, Defendants argue that FedEx correctly calculated Plaintiff's retirement benefits. Defendants highlight the proof that a third-party administrator calculated Plaintiff's benefits. Defendants go on to argue that Plaintiff raised the issue of the proper calculation of his retirement benefits when he filed a complaint with the DOL after his termination but before he filed the instant suit. As Defendants' recitation of the evidence shows, Defendants recalculated Plaintiff's imputed earnings for each period of military

leave he took during his tenure with FedEx. Defendants then provided the recalculated imputed earnings figure to Mercer, which calculated and adjusted Plaintiff's retirement benefits. According to Defendants, Plaintiff continues to maintain that the calculations are incorrect but without actually showing how they are incorrect or what the correct calculation of his retirement benefits would be. Defendants argue then that the issue of Plaintiff's retirement benefits is now moot.

Even if the issue is not moot, Defendants maintain that FedEx has calculated Plaintiff's imputed earnings in accordance with USERRA. Defendants assert that Plaintiff's regular rate of pay was not reasonably certain at all times due to shift differential pay, overtime pay, and license premium pay. To account for these factors, Defendants did a 12-month look-back for each of the 55 times Plaintiff took military leave and performed 55 separate calculations to arrive at his pay rate for each leave of absence. Defendants then examined Plaintiff's time records to project how many hours Plaintiff would have worked during each leave of absence, a total of 2,166 hours for all periods of military leave. As a result of their efforts to recalculate Plaintiff's imputed earnings for his military leaves of absence, Defendants credited Plaintiff with $92,463.50 in imputed earnings. Defendants then forward this information to Mercer for the recalculation of Plaintiff's retirement benefits. Therefore, the Court should rule in Defendants' favor on Plaintiff's claim for retirement benefits and claim for liquidated damages.

Plaintiff has responded in opposition to Defendants' Motion for Summary Judgment. Plaintiff begins by arguing that he can make out a prima facie USERRA claims based on close temporal proximity, about one month, between his suspension and

his latest military duty and complaint about the proper calculation of his retirement benefits. Plaintiff's termination occurred shortly after his suspension. In light of this proof, Plaintiff contends that he has made out his prima facie case. As for the reasons Defendants gave for his termination, Plaintiff argues that his wife's shipment of two items sold online and only days after FedEx revised the reduced-rate shipping policy could not have justified his termination. Plaintiff had no history of any work-related discipline. As for evidence of Defendants' animus against military members, Plaintiff cites FedEx policies on shift bids and the denial of employee benefits to employees while on military leave.[25]

Plaintiff further argues that the decision-makers in his termination knew about his military status. Plaintiff identifies a number of individuals as the decision-makers in his case and argues that each knew about his military status, his "military-related" complaints, his cooperation in a previous DOL investigation, and his complaints about the calculation of his retirement benefits. Plaintiff goes on to argue that he has evidence of a similarly situated non-protected employee receiving more favorable treatment. According to Plaintiff, Pablo Melgar also violated the reduced-rate shipping policy. Melgar lost his job but was later reinstated during the internal appeals process.

Having discharged his burden as to the prima facie case, Plaintiff contends that Defendants cannot show that FedEx had legitimate reasons for his termination. Plaintiff argues that there is a dispute about whether he even knew the terms of the reduced-rate

---

[25] Plaintiff also argues that a remark made by his direct supervisor Troy Turnipseed about the "inconvenience" of Plaintiff's military service constitutes evidence of bias. As previously noted, Defendants filed a Motion in Limine to exclude any evidence of Turnipseed's comment, and Plaintiff has responded that he does not oppose the Motion. Therefore, the Court declines to consider the comment in deciding Defendants' Motion for Summary Judgment.

shipping policy. FedEx did not advise Plaintiff of the September 2012 changes in the policy immediately prior to his suspension and termination. Plaintiff asserts that FedEx had revised the policy multiple times in 2012 alone. Plaintiff cites testimony from another FedEx employee describing the policy as so vague that many FedEx employees began shipping packages by UPS. The record also shows that FedEx gave other employees who violated the discount shipping policy warnings or the choice to resign. Plaintiff was not offered these options. Plaintiff argues then that a genuine dispute exists over whether termination was justified for his first-time offense and in light of his history of making protected complaints about FedEx's treatment of service personnel.

Plaintiff highlights that his name did not appear on the initial audit for high-volume shippers among FedEx employees. FedEx has never disclosed how many of the reduced-rate shipments sent by Plaintiff and his wife included merchandise sold on commercial websites. Plaintiff argues that the honest belief rule cited by Defendants in their opening brief is not relevant. The question for a jury in this case is whether the reasons given by FedEx for Plaintiff's termination are the real reasons. The particularized facts of the record suggest several factual disputes on this point. Specifically, Plaintiff asserts that Defendants concealed the fact that FedEx was not properly crediting the retirement accounts of service personnel as far back as 2006, even though a FedEx vice-president had assured Plaintiff and others that the accounts were being properly credited. Furthermore, Plaintiff was terminated about a month after his military duty and complaints about his retirement benefits. FedEx revised the reduced-rate shipping policy only two days before Plaintiff's wife had shipped merchandise sold online. Plaintiff and his wife arguably did not violate the policy's prohibition on

"commercial enterprises." And FedEx did, in fact, fail to credit Plaintiff's retirement account but admitted as much only after Plaintiff was terminated and had filed a complaint with DOL. Plaintiff lastly cites evidence of non-military employees violating the reduced-rate shipping policy but not losing their jobs.

Concerning the calculation of his retirement benefits, Plaintiff reviews the facts surrounding his post-termination DOL complaint and FedEx's admission that his benefits were not correctly calculated. Plaintiff then submits that FedEx's revised calculations are still incorrect. Rather than showing why FedEx's methodology is flawed or what the correct amount of his benefits would be, Plaintiff simply states that the calculations are incorrect. Plaintiff concludes by arguing that he has adequately pleaded a claim for liquidated damages and adduced evidence of FedEx's willfulness. Therefore, the Court should deny Defendants' Motion for Summary Judgment.

Defendants have filed a reply. Defendants first argue that Plaintiff cannot rely on temporal proximity between his protected activity and the adverse employment action against him in this case. Plaintiff's violation of the reduced-rate shipping policy occurred before he made any protected complaint about the calculation of his retirement benefits. Plaintiff also failed to show that he made complaints about his retirement benefits in August 2012. The proof shows that Plaintiff called the FedEx Retirement Services Center where he spoke to an employee of Mercer. The latest complaint Plaintiff made about his retirement benefits was in May or June 2012. Defendants add that Plaintiff's summary judgment affidavit referring to an August 2012 complaint is inconsistent with his prior deposition testimony on this point and should therefore be disregarded. And as far as Plaintiff's July 2012 military service, Defendants argue that the temporal proximity

clock began not when Plaintiff took leave to perform his military duties in July 2012 but when he first notified FedEx of his need for leave several weeks prior to that time. The record further shows that FedEx allowed Plaintiff to take military leaves of absence on 55 separate occasions. Plaintiff has not shown then that Defendants discriminated against him on the basis of his military status.

As for Plaintiff's other evidence cited to show disparate treatment, Defendants argue that Plaintiff lacks any admissible proof about Pablo Melgar or any facts to demonstrate that he and Melgar were similarly situated. Defendants also argue that Plaintiff has no proof that other employees who violated the reduced-rate shipping policy were disciplined less harshly or given the opportunity to resign. The deposition testimony cited by Plaintiff does not support his conjecture about how FedEx dealt with the other employees. As for the knowledge of the relevant decision-makers, Plaintiff has not shown that Williams or anyone else in the security department was aware of his military status. Defendants go on to challenge Plaintiff's claims about FedEx improperly crediting its pilots for their military service. According to Defendants, FedEx's issues with its pilots are irrelevant because the dispute centered on the terms of the collective bargaining agreement between FedEx and the pilots' union. That agreement has no effect on how FedEx calculated imputed pay for non-union employees like Plaintiff who also serve in the military. Finally, Defendants argue that Plaintiff has failed to carry his burden to show how FedEx has improperly calculated his retirement benefits. Rather than showing that a genuine dispute exists on the issue, Plaintiff states in conclusory fashion that FedEx's calculations are still incorrect. For all of these reasons, Defendants argue that the Court should grant their Motion for Summary Judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[27] and the court "may not make credibility determinations nor weigh the evidence."[28] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[29] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[30] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[31] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party

---

[26] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[27] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[28] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[29] *Celotex*, 477 U.S. at 324.

[30] *Matsushita*, 475 U.S. at 586.

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

must prevail as a matter of law."[32]  In this Circuit, the nonmoving party must "put up or shut up" as to the critical issues of the claim.[33]  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[34]

## ANALYSIS

"USERRA was enacted to prohibit discrimination against individuals because of their military service."[35]  The Sixth Circuit has remarked that "because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries."[36]  In this case the Court construes Plaintiff's Amended Complaint to allege three distinct USERRA claims: discrimination against him on the basis of his military status in violation of 38 U.S.C. § 4311(a), retaliation against him for exercising his rights under USERRA in violation of 38 U.S.C. § 4311(b), and the denial of retirement benefits to which he was entitled under USERRA in violation of 38 U.S.C. § 4318.[37]  Defendants' Motion seeks judgment as a

---

[32] *Anderson*, 477 U.S. at 251–52.

[33] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[34] *Celotex*, 477 U.S. at 322.

[35] *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 754 (6th Cir. 2012) (citations omitted).

[36] *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 446 (6th Cir. 2008) (quotation omitted).

[37] Plaintiff's Amended Complaint does not specifically refer to paragraphs (a) and (b) of section 4311.  Plaintiff has pleaded separate allegations that Defendants violated "his rights under 38 U.S.C. § 4311, among other ways, by discriminating against him and

matter of law on each claim, though the parties' briefing on the discrimination and retaliation claims overlaps and largely treats the two claims as one cause of action. The Court considers each theory of relief accordingly.

## I. USERRA Discrimination and Retaliation

Plaintiff first alleges that FedEx discriminated against him on the basis of his military service in violation of USERRA's "anti-discrimination provision" at 38 U.S.C. § 4311(a).[38] The statute provides as follows:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.[39]

The statutes goes on to state that an "employer shall be considered to have engaged in actions prohibited under subsection (a), if the person's . . . obligation for service in the uniformed services is a motivating factor in the employer's action . . . ."[40] "An individual bringing a § 4311 claim has the initial burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action(s)."[41] "Protected

---

unlawfully discharging him," Am. Compl. ¶ 43, and violated "his rights under 38 U.S.C. § 4311, among other ways, by retaliating against him for his attempt to enforce his and other service members' USERRA rights." *Id.* ¶ 44.

[38] *Slusher v. Shelbyville Hosp. Corp.*, 805 F.3d 211, 219 (6th Cir. 2015).

[39] 38 U.S.C. § 4311(a).

[40] § 4311(c)(1)(A).

[41] *Slusher*, 805 F.3d at 219 (citing *Petty*, 538 F.3d at 446).

status is a motivating factor if a truthful employer would list it, if asked, as one of the reasons for its decision."[42]

Plaintiff's Amended Complaint can also be read to allege retaliation in violation of USERRA. "USERRA not only prohibits general discrimination based on military service, but also retaliation."[43] The Act's anti-retaliation provision is found at 38 U.S.C. § 4311(b) and provides as follows:

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.[44]

The statute makes an employer liable "under subsection (b), if the person's action to enforce a protection afforded any person under this chapter . . . is a motivating factor in the employer's action . . . ."[45] Just as with Plaintiff's discrimination claim, Plaintiff has the initial burden to prove his retaliation claim by showing that his "action to enforce a right protected by [USERRA] was a motivating factor in an adverse employment decision."[46]

---

[42] *Escher v. BWXT Y–12, LLC,* 627 F.3d 1020, 1026 (6th Cir. 2010).

[43] *Hance v. BNSF Ry. Co.*, No. 13-2656-STA-tmp, 2015 WL 4276260, at *4 (W.D. Tenn. July 15, 2015).

[44] 38 U.S.C. § 4311(b).

[45] § 4311(c)(1)(B).

[46] *Eichaker v. Village of Vicksburg*, No. 15-1128, 2015 WL 5827540, at *3 (6th Cir. Oct. 5, 2015).

A number of factors may create an inference of discrimination or retaliation such as (1) "proximity in time between the employee's military activity and the adverse employment action," (2) "inconsistencies between the proffered reason and other actions of the employer," (3) "the employer's expressed hostility toward military members together with knowledge of the employee's military activity," and (4) "disparate treatment of certain employees compared to other employees with similar work records or offenses."[47]  If a plaintiff satisfies his burden to prove a prima facie case, the burden of production and persuasion "then shifts to the employer to prove the affirmative defense that the employment action(s) would have been taken in the absence of the employee's protected status."[48]

The Court holds that Plaintiff had not adduced evidence to make out his USERRA claims.  Not surprisingly, Plaintiff has no direct evidence of discriminatory animus against him, as "discrimination is seldom open or notorious."[49]  Plaintiff's claim largely rests on three types of circumstantial evidence: the temporal proximity between his termination and his last leave of absence for military duty; FedEx's treatment of a comparator employee, Pablo Melgar; and inconsistencies in FedEx's application of the reduced-rate shipping policy.  Plaintiff has further argued that FedEx had a culture of hostility towards service personnel.  For the reasons that follow, the Court concludes that none of the proof constitutes circumstantial evidence of discrimination or retaliation

---

[47] *Hance v. Norfolk Southern Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009).

[48] *Slusher*, 805 F.3d at 219.

[49] *Sheehan v. Dept. of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001).

against Plaintiff on account of his military service or his protected complaints about his retirement benefits.

## A. Temporal Proximity Between Plaintiff's Protected Activity and Termination

Concerning temporal proximity between Plaintiff's "military activity" and FedEx's adverse employment action, Plaintiff has shown that he engaged in "military activity" when he was away on military duty from July 29, 2012, through August 10, 2012.[50] FedEx took an adverse employment action against Plaintiff when FedEx terminated his employment on September 20, 2012.[51] In other words, Plaintiff's termination occurred 41 days after Plaintiff had completed his most recent military service. The most favorable view of the evidence also shows that Plaintiff made his latest complaint about the calculation of his retirement benefits sometime in early August 2012, at about the same time he returned from his military duty.[52] For purposes of Plaintiff's

---

[50] Defendants argue that the Court should measure the temporal proximity between Plaintiff's termination and the date on which he first advised FedEx he would need to take the July-August 2012 military leave. Plaintiff apparently notified FedEx about his military obligation several weeks before Plaintiff actually went on leave. The case on which Defendants rely for this proposition does not actually state such a rule.

[51] In his brief Plaintiff cites the temporal proximity between his military leave and his suspension as well, which took effect on September 12, 2012. Pl.'s Resp. in Opp'n 8-9 (ECF No. 97). It is undisputed, however, that Plaintiff's suspension pending the investigation was with full pay and benefits. The Sixth Circuit has repeatedly held in other types of employment discrimination cases that a suspension with pay pending an investigation into employee misconduct is not an adverse employment action. *E.g. Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625 (6th Cir. 2013) (Title VII race discrimination); *Peltier v. United States*, 388 F.3d 984 (6th Cir. 2004) (Title VII gender discrimination); *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 800 (6th Cir. 2004) (same).

[52] Defendants argue that Plaintiff's summary judgment affidavit claiming that he continued to raise the issue as late as August 2012 is inconsistent with his deposition testimony and therefore should be disregarded. Defendants cite Plaintiff's testimony that he raised the issue in late May or early June 2012. Defendants also maintain that when

retaliation claim then, the Court will assume that Plaintiff inquired about his benefits approximately 40 days before FedEx terminated him. Defendants argue at summary judgment that this span of time is insufficient to prove discriminatory animus or retaliatory intent. Plaintiff argues that temporal proximity of 40 or 41 days, taken by itself, is enough to make out a prima facie USERRA claim.

Temporal proximity is a familiar concept in employment discrimination cases alleging retaliation where a plaintiff has the burden to establish a causal connection between a protected activity and an adverse employment action. As a general rule, a plaintiff alleging retaliation must couple temporal proximity with some additional proof

---

Plaintiff contacted the FedEx Retirement Center about his benefits, Plaintiff was actually relaying complaints to employees of Mercer, and not FedEx.

The parties have provided and cited to the transcript of Plaintiff's deposition testimony. The record shows that Plaintiff was asked a number of questions about how and when he brought the issue of his retirement benefits up in 2012. At one point, Plaintiff gave the following testimony about when he made the latest of his complaints:

> Q. What was the last month that you recall contacting anybody at FedEx in regard to this issue where you believed that FedEx had failed to properly credit your retirement account while you were performing military services?
>
> A. August 2012
>
> Q. Okay. So in August 2012, who did you contact?
>
> A. The retirement benefits center.
>
> Savage Dep. 325:1-9 (ECF No. 97-6).

Viewing this testimony in the light most favorable to Plaintiff, the Court finds that Plaintiff last raised the issue in August 2012. As for what effect the complaints to the retirement benefits center had, Plaintiff testified that he raised the issue first with FedEx management and was eventually told to contact the retirement benefits center. Defendants' argument that Plaintiff's inquiries with the retirement benefits center cannot be attributed to FedEx is likely a jury question. For purposes of summary judgment, the Court need not resolve the issue and will assume that the latest of Plaintiff's protected inquiries occurred in August 2012.

of discriminatory motive. In a narrower class of retaliation cases, the Sixth Circuit has held that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."[53] Put another way, "in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time," temporal proximity alone may suffice to prove retaliation.[54] Even then, "temporal proximity alone [is] not particularly compelling [when] the plaintiff's retaliation case [is] otherwise weak, and there [is] substantial evidence supporting the defendant's version of the events."[55]

The Sixth Circuit applies the same legal standards for temporal proximity in USERRA cases, both in cases of discrimination under § 4311(a) and retaliation under § 4311(b), that it applies in retaliation cases generally. For example, in *Hance v. Norfolk Southern Railway*, the Court of Appeals held that "evidence of anti-military animus from a decision-maker, combined with the close temporal relationship between Hance's two-week leave for military service and his discharge [25 days later]" made out the plaintiff's prima facie claim of USERAA discrimination.[56] The panel in *Bobo v. United Parcel Service* concluded that temporal proximity of "just two weeks [between the plaintiff's] scheduled 2007 military service" and his termination was, in and of itself, sufficient to

---

[53] *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008).

[54] *DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004).

[55] *Laughlin v. City of Cleveland*, No. 15-3486, 2015 WL 8290037, at *3 (6th Cir. Dec. 9, 2015) (quoting *Nguyen v. City of Cleveland,* 229 F.3d 559, 567 (6th Cir. 2000)).

[56] *Hance*, 571 F.3d at 518.

establish a prima facie claim of USERRA retaliation.[57]  By contrast, the panel in *Escher v. BWXT Y-12, LLC* held that temporal proximity of just 30 days between a plaintiff's complaints about military leave and an internal investigation of the plaintiff's misuse of workplace resources was insufficient to prove a USERRA claim because the plaintiff's misuse of workplace email came up in an anonymous complaint and the sole decision-maker about the plaintiff's termination "had no knowledge of [the plaintiff]'s military leave complaints."[58]

Applying these principles in this case and viewing the evidence in the light most favorable to Plaintiff, proof of temporal proximity, a matter of 40 or 41 days between the end of Plaintiff's military leave of absence and his complaints about the calculation of his retirement benefits and his termination, does not support Plaintiff's USERRA claims. Plaintiff was terminated for violations of the FedEx discount shipping policy, specifically using his employee shipping discount 90 times between March and August 2012 to ship merchandise he and his wife sold to buyers online.  Plaintiff's own actions, the frequency with which he and his wife used the discount, caused his name to appear on a regularly-conducted audit of high-volume users of the employee shipping discount.  Plaintiff has not shown that his military service or complaints about his retirement benefits ever entered into FedEx's decision to investigate his discounted shipping activities.  There is simply no evidence that the timing of the September 2012 audit identifying Plaintiff's shipping activities had any causal connection to his protected military activity, i.e. taking

---

[57] *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 756 (6th Cir. 2012).

[58] *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1026-27 (6th Cir. 2010).

military leave in July and August 2012 or complaining about the calculation of his retirement benefits in August 2012.

Additionally, Plaintiff was in the Naval Reserves when FedEx first employed him in 2001 and had taken military leave on 55 other occasions during his eleven-year tenure with FedEx. The fact that Plaintiff was a reservist at the time of his initial employment and throughout his time at FedEx is not indicative of improper discrimination.[59] It is undisputed that FedEx had always accommodated his leave requests, even allowing him to travel to military duty on FedEx aircraft and complete other training on company time using company computers. Based on this record, there is simply no evidence of discriminatory intent or retaliatory motive, despite the fact that Plaintiff was terminated only 40 or 41 days after returning from military leave.

Plaintiff points out that he was not listed on the initial audit of employees with the highest frequency of discounted shipments and only came up on a second audit. However, it appears to be undisputed that the second audit was run only because certain individuals listed in the first audit were already under investigation for their possible abuse of the employee discount. Plaintiff has cited no proof to show that FedEx intentionally targeted him for investigation or that his name appearing on the second audit was anything other than the result of an automated process for analyzing employee use of the shipping discount. Plaintiff further argues that FedEx never determined how many times he used his shipping discount appropriately and how many times he used the discount to ship goods his family had sold online. But these facts go to the thoroughness

---

[59] *Slusher*, 805 F.3d at 220 (finding that the fact that the plaintiff was in the military and subject to deployment at the time the employer first hired him did not suggest anti-military bias when the employer fired the plaintiff following his deployment).

of FedEx's investigation and the grounds supporting the decision to terminate Plaintiff. The quality of the investigation and weight of the evidence are relevant to FedEx's decision to terminate but have little to do with whether the closeness in time between Plaintiff's military duty and the audit and investigation suggests discriminatory intent.

The Court finds the facts of this case to be largely analogous to the facts presented in *Escher*, a case where the Sixth Circuit held that temporal proximity of 30 days did not establish a prima facie claim of USERRA retaliation. The plaintiff in *Escher* was in the Naval Reserves and complained to his employer when the company "changed its Military Leave Policy, and no longer allowed employees to enter a partial week of 'unpaid military leave' once they had exhausted their 80 hours of military leave pay."[60] The plaintiff made the second of his two complaints about the policy change when he returned from military duty in the summer of 2005. About 30 days later, on August 17, 2005, an anonymous complaint was made against the plaintiff alleging that he was performing Naval Reserve work and using the employer's resources for Naval Reserve business. The ensuing investigation showed that the plaintiff had spent "an inordinate amount of time" between 1999 and 2005 sending and receiving emails and making telephone calls on Naval Reserve business, all while on the clock with his employer.[61] Human resources investigated the complaint, and the division manager supervising the plaintiff made the decision to terminate him but had no knowledge of his protected complaints about the company's timekeeping policy on military duty.

The facts of *Escher* bear a resemblance to the facts in this case in a number of important respects. Like the plaintiff in *Escher*, Plaintiff's termination came close on the

---

[60] *Escher*, 627 F.3d at 1023.

[61] *Id.* at 1024 n.1.

heels of his military leave of absence and complaints about how his employer's policies impacted employees performing military service. In fact, the temporal proximity of 30 days in *Escher* was even briefer than the temporal proximity of 40 or 41 days in this case. Like the plaintiff in *Escher*, Plaintiff came under suspicion for violating company policy, not because of the scrutiny of a supervisor harboring some discriminatory animus but by means of an anonymous or randomized process used to bring possible employee misconduct to light. Like the plaintiff in *Escher*, Plaintiff's violations of company policy all occurred long before his employer ever discovered them and before Plaintiff had engaged in the protected military activity or complaints immediately preceding the adverse action. Like the plaintiff in *Escher*, the fact of Plaintiff's military service and complaints about his retirement benefits never came up during the investigation and played no role in the employer's conclusion that a violation of company policy had occurred. Based on these similarities, the Court follows the Sixth Circuit's reasoning in *Escher* and holds that proof of temporal proximity between Plaintiff's military activity and his termination does not establish his prima facie case of USERRA discrimination or retaliation.

**B. FedEx's Treatment of Pablo Melgar**

Plaintiff next relies on what he contends is the more favorable treatment FedEx gave a similarly situated, non-protected employee. According to Plaintiff, Pablo Melgar, an aircraft mechanic who had formerly worked in Plaintiff's group, violated the reduced-rate shipping policy by allowing his girlfriend to use his employee discount. Plaintiff testified at his deposition that FedEx initially terminated Melgar but then reinstated him after Melgar appealed the decision. Plaintiff's brief also mentions a table, apparently

showing other employees who violated the reduced-rate shipping policy but were not terminated. Defendants respond that Plaintiff has not presented any admissible evidence to support these contentions or any other proof about the facts and circumstances surrounding Melgar's case to show that Melgar and Plaintiff are similarly situated or committed acts of comparable seriousness.

"Discrimination cases frequently turn on whether the plaintiff can identify one or more comparators who are similarly situated in all relevant respects."[62] As previously mentioned, evidence of "disparate treatment of certain employees compared to other employees with similar work records or offenses" can be probative of discriminatory intent in USERRA cases and is one means of making out a prima facie claim of discrimination.[63] A USERRA plaintiff must show "that he and his proposed comparators were similar in all relevant respects," though "an exact correlation between himself and others similarly situated" is not required.[64] A USERRA plaintiff also has the burden to show that another employee's acts were of "comparable seriousness" to his own infraction.[65] Viewing the evidence in a light most favorable to Plaintiff, the Court holds that Plaintiff has failed to make these showings.

Plaintiff has not cited any admissible evidence to show what conduct Melgar actually engaged in or how Melgar's violations of the reduced-rate shipping policy were

---

[62] *Bobo*, 665 F.3d at 753.

[63] *Id.* at 754.

[64] *Id.* at 751 (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998)).

[65] *Escher*, 627 F.3d at 1029 (citing *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)).

comparable to the violations committed by Plaintiff. At summary judgment, Plaintiff cites only inadmissible hearsay.[66] First, Plaintiff offered his own hearsay testimony about Melgar's abuse of the shipping discount. Plaintiff testified that he spoke with Melgar by telephone and Melgar described his termination for violating of the reduced-rate shipping policy and his GFTP appeal. When Plaintiff talked with Melgar, Melgar was no longer in Memphis and had transferred to a job with FedEx in Miami. In his deposition testimony, Plaintiff simply repeated what Melgar told him during the telephone call and relayed only the barest of details at that. Second, Plaintiff relies on the deposition testimony of Joffre Disabatino, another FedEx employee, to establish the facts of Melgar's case. But Disabatino specifically disclaimed any personal knowledge about Melgar's violation of the reduced-rate shipping policy and testified only about what he had heard "[o]ver the watercooler."[67]

The Court holds that the testimony of Plaintiff and Disabatino about Melgar's abuse of the reduced-rate shipping privilege is inadmissible hearsay, which the Court

---

[66] Defendants have filed a Motion in Limine (ECF No. 107) to exclude any trial testimony from Plaintiff or Joffre Disabatino about Plaintiff's comparator Pablo Melgar. Plaintiff has responded (ECF No. 115) that he does not oppose the Motion in Limine but does believe he can get the evidence in through another FedEx witness Scott Ogden. What Plaintiff has failed to do, however, is show the Court what Ogden's testimony would be or how it would create a triable issue and allow Plaintiff to survive summary judgment. Inexplicably, Plaintiff has instead relied on his own testimony and Disabatino's testimony in his opposition brief only to concede in his response to the Motion in Limine that the testimony should be excluded. As such, Plaintiff has failed to comply with the requirements of Rule 56. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . .is genuinely disputed must support the assertion *by citing to particular parts of materials in the record* . . . .") (emphasis added). The unopposed Motion in Limine is **GRANTED**.

[67] Disabatino Dep. 33:14-35:16 (ECF No. 99-2).

cannot consider at summary judgment.[68]  This leaves only a copy of a warning letter (ECF Nos. 98, 99-5) addressed to Pablo Melgar and signed by Scott Ogden to support Plaintiff's claim that FedEx treated Melgar more favorably.  Plaintiff attached the letter as an exhibit to his response in opposition to Defendants' Motion for Summary Judgment.  Evidence submitted in opposition to a motion for summary judgment must be admissible; unauthenticated documents are generally inadmissible.[69]  Plaintiff has not authenticated the letter in any way.  Plaintiff has not provided affidavits from Ogden or Melgar or any other party with knowledge of the preparation of the letter.  As such, the Court declines to consider the letter here.  Without more, the Court concludes that Plaintiff has not shown how Melgar was similarly situated in all relevant respects or that Melgar committed acts of comparable seriousness.

Plaintiff's brief also refers to a table of other employees who violated the reduced-rate shipping policy and who either were terminated or resigned their jobs. Plaintiff has not attempted to show how any employee on the table was similarly situated to him.  In fact, Plaintiff has not even made a copy of the table part of the record at summary judgment.  As such, the Court has no way to consider the table further. Therefore, the Court concludes that Plaintiff has failed to prove Defendants treated similarly situated, non-protected employees more favorably.

---

[68] *Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 405 (6th Cir. 2014) ("[I]t is well established that a court may not consider inadmissible hearsay when deciding a summary-judgment motion.").

[69] *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir. 2009); *see also Alliant Tax Credit Fund 31–A, Ltd. v. Murphy,* 494 F. App'x 561, 572 (6th Cir. 2012) ("Evidence is properly authenticated when a witness with knowledge testifies that the evidence is what it claims to be.").

## C. Inconsistencies Between FedEx's Proffered Reason and Its Other Actions

Plaintiff also argues that FedEx's proffered reason for his termination "is inconsistent with FedEx's own policies."[70]  Plaintiff can make out a prima facie USERRA claim by showing "inconsistencies between the proffered reason and other actions of the employer."[71]  Proof of this kind is found in cases where an employer at first offers one reason for taking an adverse action against an employee and then varies or amends its reasoning as time goes by.  It is well-settled in employment discrimination law generally that "[s]hifting and inconsistent reasons for an adverse action may create an inference of pretext when those reasons change throughout the suit."[72]  Plaintiff has not shown that FedEx has offered "shifting and inconsistent reasons" for his termination; the undisputed evidence shows that it has not.

In USERRA cases, the Sixth Circuit has not limited the "inconsistencies" just to inconsistent explanations for taking an adverse action.  In *Escher v. BWXT Y-12, LLC*, the Court of Appeals analyzed the question of whether an employee had actually violated company policy as a possible "inconsistency" on the employer's part.  The panel in *Escher* ultimately decided that the employee did engage in workplace misconduct, and so no "inconsistency" on the employer's part had occurred.  In this case Plaintiff argues that FedEx management offered inconsistent testimony about when a violation of the reduced-rate shipping policy merited termination.  According to Plaintiff, Thomas Lott, Plaintiff's human resources advisor, testified that a violation of the reduced-rate shipping

---

[70] Pl.'s Resp. in Opp'n 11 (ECF No. 97).

[71] *Hance*, 571 F.3d at 518.

[72] *Choices in Community Living, Inc. v. Petkus*, 517 F. App'x 501, 508 (6th Cir. 2013) (citing *Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 319–20 (6th Cir. 2007)).

policy might merit termination but depended on the number of violations or the relative newness of the policy. Plaintiff asserts that on the other hand, Sean Driver and Patricia Williams from FedEx's security department testified that a single violation of the policy could result in termination. Plaintiff contends then that the "inconsistency" in the testimony about the application of the policy is probative of discrimination.

The Court disagrees. Plaintiff actually misstates the testimony given by Lott and Driver. Lott only testified that disciplinary decisions about violations of the policy were a "judgment call" but unequivocally stated that Plaintiff's use of the shipping discount 200 times over 24 months was so "egregious" as to amount to an abuse of the privilege.[73] And Driver's testimony was not that a single violation of the policy would always warrant termination. Driver testified that "once [Plaintiff] admitted that he violated the policy," FedEx did not attempt to ascertain exactly how many times Plaintiff used the discount to ship goods sold online[74] Rather than showing an "inconsistency" about the application of the policy, the witnesses actually agreed that Plaintiff had violated the policy and that his violations were serious enough to justify his termination. This proof fails to demonstrate an "inconsistency" in FedEx's policies or actions in this case.

Plaintiff also claims that FedEx's decision to terminate him was "inconsistent" with FedEx policy. Plaintiff maintains that FedEx terminated him for violating the revised reduced-rate shipping only days after it had gone into effect in early September

---

[73] Lott Dep. 95:7-96:21, Feb. 12, 2015 (ECF No. 99-6).

[74] Driver Dep. 40:10-24, June 2, 2015 (ECF No. 99-7) ("As it relates to the amount of shipments that he shipped, whether it was 0 through 90 the Plaintiff admitted to [the investigator] that he was selling items and using his FedEx discount, and FedEx cannot pinpoint and say whether two, three, four, five, fifteen or twenty were used during that time.")

2012 and despite the fact that Plaintiff was unaware of the revision and this was Plaintiff's first offense. It is undisputed that FedEx revised the reduced-rate shipping policy, effective September 2, 2012, to explicitly prohibit the use of the employee discount to ship items sold on eBay. The record shows, however, that Plaintiff was investigated for high-volume shipping activities that occurred between March and August 2012, not the few shipments his wife made after the policy was revised. FedEx began its investigation after Plaintiff's name came up on an audit of high-volume shippers for the period of March 2012 through August 2012. During the investigatory interview, Plaintiff admitted that he and his wife had used the shipping discount over those months (and even before that) to ship goods sold for profit through online websites like eBay. Plaintiff even advertised free shipping for his buyers. To say then that FedEx fired Plaintiff for one or two violations that occurred after September 2, 2012, when Plaintiff had no notice of the policy revision, is specious at best.

Moreover, Plaintiff's activities constituted a violation of the policy, under any reasonable reading of the policy in effect prior to September 2, 2012. The policy in effect during the period from March 2012 to August 2012 included a section titled "Abuse Guidelines" and described the discount as a "privilege."[75] The policy was clear that appropriate use of the shipping discount "must result in a direct and personal benefit for the employee/retiree." The policy prohibited use of the discount "for any business (profit

---

[75] The reduced-rate shipping policy in effect during that time was adopted in December 2011 and then amended in May 2012. FedEx has included a copy of the May 2012 policy as an exhibit to its Motion for Summary Judgment. FedEx has not attached a copy of the December 2011 version of the policy but did attach a copy of the February 2011 version. This omission is not critical because both the February 2011 and May 2012 versions of the policy contained identical "Abuse Guidelines" sections, and Plaintiff has not shown that the December 2011 differed in any way from the February 2011 policy.

or nonprofit) or commercial enterprise." The policy went on to define "abuse of the privilege" with a non-exhaustive list of examples, among them the following: the "[u]se of the discount in a way not resulting in a direct and personal benefit for the employee/retiree such as commercial use." The policy warned that "[i]mproper use or abuse of employee discount shipping privileges . . . is considered a policy violation and subjects the employee to discipline, up to and including termination . . . ." [76] The Court finds that the policy's prohibition on shipping for "commercial use" was easily broad enough to include Plaintiff's activities, shipping goods to third-party buyers at FedEx's expense and at no cost to the buyer. In light of the terms of the reduced-rate shipping policy, Plaintiff has not shown that FedEx's actions were inconsistent with the policy.

It is true that FedEx revised the policy in September 2012, amending the non-exhaustive list of examples defining "abuse of the privilege" to include the following: "[u]sing discount privileges to deliver package to customer or winning bidder in connections with sale of item from E-Bay sale or other online auction."[77] But this revision made explicit what was already implicit under the broad prohibition on an employee's "commercial use" of the shipping discount. Plaintiff's theory that FedEx applied the revised policy ex post facto to terminate him for his shipments prior to September 2, 2012, lacks evidentiary support. Nor has Plaintiff shown that FedEx terminated him solely for shipping a small number of packages after September 2, 2012.

---

[76] Reduced-Rate Shipping Discount, Feb. 20, 2011 (ECF No. 90-9, Page ID # 735); Reduced-Rate Shipping Discount, May 20, 2012 (ECF No. 90-9, Page ID # 741).

[77] Reduced-Rate Shipping Discount, Sept. 2, 2012 (ECF No. 90-9, Page ID # 747).

Therefore, Plaintiff has failed to show an inconsistency between FedEx's policies and its actions in this case.

## D. Proof of FedEx's Hostility Toward Military Members

Plaintiff lastly argues that FedEx had a "corporate culture of hostility to service members."[78] At summary judgment Plaintiff has not actually adduced any evidence of such a culture. As already noted, Plaintiff has conceded the exclusion of a stray remark from his supervisor Troy Turnipseed about the "inconvenience" of arranging travel for Plaintiff to return home from military duty by way of FedEx aircraft on one occasion. Plaintiff is left to rely on his own vague testimony about a stray comment from a coworker. According to Plaintiff, Michael Jones once quipped to Plaintiff that it was unfair for Plaintiff to receive two retirements, one from FedEx and one from the Naval Reserves. Plaintiff has not shown how Jones's single comment is typical of a "culture" at FedEx or is otherwise indicative of a broader atmosphere of discrimination.

Plaintiff also argues that "FedEx's history of failing to properly credit service members' retirement accounts" is itself evidence of anti-military animus. Plaintiff is apparently referring to a previous dispute between FedEx and its pilots union over the proper calculation of retirement benefits for FedEx pilots. Plaintiff has not shown, however, how this dispute is relevant to his individual concerns about the calculations of his benefits for periods of military service. The evidence shows that a collective bargaining agreement governed the calculation of the pilots' retirement benefits and that Plaintiff was not a member of the pilots union. Plaintiff further cites other FedEx policies that he believes had a disparate impact on military personnel. However, none of these

---

[78] Pl.'s Resp. in Opp'n 12 (ECF No. 97).

general policies or Plaintiff's comments about them make it more likely than not that Defendant terminated Plaintiff because of his service in the Naval Reserves or his protected complaints about the proper calculation of his retirement benefits.

Having concluded that Plaintiff has adduced no evidence of discriminatory purpose or retaliatory intent, the Court holds that Plaintiff has not established a prima facie USERRA claim.

## E. FedEx Would Have Terminated Plaintiff Anyway

Even if Plaintiff had carried his burden to prove a prima facie case of discrimination or retaliation, the Court holds that FedEx has satisfied its burden to show that it would have terminated Plaintiff, regardless of his military status.[79] For many of the reasons already explained, the Court finds no genuine dispute about the fact that Plaintiff's military status was not a motivating factor in his termination. Defendants have shown that Plaintiff had been in the Naval Reserves throughout his 11 years of employment with FedEx and had taken military leave 55 times. FedEx regularly supported Plaintiff in his military commitments by allowing him to use FedEx resources to carry out his military duties and training. The proof also shows that Plaintiff opposed FedEx policies or practices with some frequency when in Plaintiff's opinion the policies or practices adversely affected military personnel. And yet Plaintiff never suffered any retaliation for his efforts to raise his concerns about FedEx's treatment of military personnel. Plaintiff even assisted other FedEx employees in making formal complaints against FedEx. Defendants have shown that those employees continue to work for FedEx. This undisputed proof hardly suggests that Plaintiff's July-August 2012 military

---

[79] *Slusher*, 805 F.3d at 219.

leave or his August 2012 complaints about the calculation of his retirement benefits motivated FedEx to fire him.

Furthermore, Defendants have demonstrated that Plaintiff only lost his job in September 2012 because his frequent use of the shipping discount in the six months prior had caused his name to appear on a regularly-conducted audit of FedEx employees' reduced-rate shipping activities. Plaintiff used his employee shipping discount multiple times over many months to ship items he sold for profit to third parties on websites like eBay and Craigslist and at no charge to his buyers. Plaintiff's then was an ongoing pattern of conduct going back many months before his termination, and not a one-off violation of company policy. Plaintiff readily admitted to the facts about his use of the reduced-rate shipping privilege. FedEx found that Plaintiff's actions amounted to an abuse of the reduced-rate shipping privilege. Defendants have adduced unrebutted proof that Plaintiff's military service and related complaints never came up in the decision to fire him. All of this evidence suggests that Plaintiff's own conduct, and not some improper motive on FedEx's part, resulted in the decision to investigate Plaintiff's shipping habits and the determination that Plaintiff's violation of the reduced-rate shipping policy warranted his termination.

At summary judgment, Plaintiff maintains that he used the discount for his "personal benefit" and that he did not believe his conduct violated the policy. Plaintiff also highlights the fact that FedEx cannot show how many times Plaintiff's use of the employee discount amounted to an "abuse of the privilege." Plaintiff essentially challenges FedEx's honest belief in its own decision-making process and its conclusion that Plaintiff's conduct should mean the loss of his job. "Even when a plaintiff has

demonstrated an issue of fact regarding the validity of the factual basis underlying his termination, an employer may still defeat an inference of pretext if it can demonstrate that it held an honest belief in its reasons for taking the adverse action."[80] The Sixth Circuit's honest belief rule entitles an employer to "summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless."[81] An employer's investigation of misconduct "need not be perfect in order to pass muster under the rule."[82] In fact, the employer is not required to interview the employee or some or all of his witnesses.[83] "The key inquiry is instead whether the employer made a reasonably informed and considered decision before taking an adverse employment action."[84] In order to rebut the employer's reliance on the rule, the plaintiff must come forward with proof of "an error on the part of the employer that is too obvious to be unintentional."[85]

The Court holds that Defendants have established that the decision to terminate Plaintiff was "reasonably informed and considered," regardless of Plaintiff's own interpretation of the reduced-rate shipping policy or his belief that he had not run afoul of the policy. The Court's task here is not to question the wisdom of FedEx's application of

---

[80] *Davis v. City of Clarksville*, 492 F. App'x 572, 580-81 (6th Cir. 2012) (citation omitted).

[81] *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590-91 (6th Cir. 2014) (quoting *Chen v. Dow Chem. Co.,* 580 F.3d 394, 401 (6th Cir. 2009)).

[82] *Id.* at 591 (citation omitted).

[83] *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 286 (6th Cir. 2012).

[84] *Loyd*, 766 F.3d at 591; *see also Escher*, 627 F.3d at 1030 (applying the honest belief rule in a USERRA case).

[85] *Id.*

its own policy in Plaintiff's case but to determine whether FedEx's actions suggest an improper motive. Plaintiff has not shown that Defendants applied the policy so unreasonably or rigidly in his case as to suggest an intentional act of discrimination or retaliation. Having decided that FedEx made a reasonably informed and considered decision to fire Plaintiff, the Court concludes that Defendants have carried their burden to show that FedEx would have terminated Plaintiff regardless of his military status or protected activity. For all of these reasons, Defendants' Motion for Summary Judgment is **GRANTED** on Plaintiff's USERRA claims under 38 U.S.C. § 4311.

## II. FedEx's Calculation of Plaintiff's Retirement Benefits

This leaves Plaintiff's claim that FedEx has denied him retirement benefits by failing to calculate his imputed earnings correctly. Plaintiff's Amended Complaint alleges that Defendants failed to calculate the retirement benefits to which he was entitled while he was on military leave, all in violation of 38 U.S.C. § 4318. At summary judgment, Defendants argue that they are entitled to judgment as a matter of law on this claim. Defendants cite evidence that after Plaintiff was terminated and filed a DOL complaint, FedEx recalculated Plaintiff's imputed earnings and credited him with an additional $92,463.50 in imputed earnings for periods while Plaintiff was on leave from FedEx performing military service. As such, Plaintiff cannot prove that FedEx has denied him retirement benefits. Plaintiff opposes summary judgment, arguing that FedEx denied him retirements benefits and that FedEx's recalculation of his imputed earnings and retirement benefits based on those earnings continues to be incorrect.

As already noted, 38 U.S.C. § 4311(a) makes it unlawful for an employer to deny a "person who . . . has an obligation to perform service in a uniformed service . . . any

benefit of employment . . . ."[86]  Section 4318(a) requires an employer to treat a person who has performed military duty "as not having incurred a break in service with the employer . . .  by reason of such person's period or periods of service in the uniformed services."[87]  In other words, employees continue to accrue retirement benefits during periods of military service, just as if they were working for their regular employer.[88]  This means that an employer will "be liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits . . .  and shall allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of [military] service."[89]

The Court holds that Plaintiff has failed to carry his burden to prove his claim that FedEx has calculated his imputed earnings and retirement benefits based on those earnings incorrectly.  FedEx has set out its methodology for recalculating Plaintiff's benefits and shown how it arrived at the additional $92,463.50 in imputed earnings.  Plaintiff has disputed FedEx's calculation of his imputed earnings.  To carry his burden at summary judgment, Plaintiff has attached to his opposition brief a declaration (ECF No. 97-3), in which Plaintiff states as follows:

> I calculated my imputed military earnings and retirement benefits, and discovered that FedEx has *still* failed to properly credit my retirement account for the time I was performing military service. I understand the

---

[86] 38 U.S.C. § 4311(a).

[87] § 4318(a)(2)(A).

[88] § 4318(a)(2)(B) ("Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.").

[89] § 4318(b)(1).

formula, the relevant data, and applied the data to the formula in calculating my benefits. I am college educated and competent to perform these calculations.[90]

Plaintiff also states that he has reviewed all of the relevant documents and lists the documents in his declaration.[91] The critical omission from Plaintiff's declaration is his own calculation of his imputed earnings or explanation of how FedEx should have calculated the earnings. Plaintiff does not provide any information more specific or detailed than these bald assertions. Defendants pointed out this defect in their reply brief and restated their argument that Plaintiff has not adduced evidence to support his claim.

The filing of a reply brief typically closes the briefing on a motion under the Local Rules of Court.[92] Yet after Defendants filed their reply on September 24, 2015, Plaintiff filed a second declaration (ECF No. 104) dated September 30, 2015, to which he attached a spreadsheet (ECF No. 104-2) purporting to show his own calculations of his imputed earnings and other lost earnings. Plaintiff's second declaration states that the spreadsheet was provided to Defendants during discovery and that counsel for Defendants questioned Plaintiff about the spreadsheet during his deposition. Plaintiff further states that some time after his deposition, his attorney called him and allowed counsel for FedEx to ask Plaintiff follow-up questions about his calculations over the telephone. Plaintiff concludes the second declaration by stating that he recalculated his benefits after his attorney deposed a representative from Mercer. Based on his own calculations, Plaintiff maintains that FedEx has still not calculated his imputed earnings

---

[90] Savage Decl. ¶ 30 (ECF No. 97-3).

[91] *Id.* ¶ 32.

[92] *See* Local Rule 56.1(c) (granting a moving party leave to file a reply as of right but making no provision for sur-replies in the normal course); *see also* Local Rule 7.2(c) (permitting a moving party to file a reply brief only with leave of Court).

correctly, though it is not clear to the Court whether the spreadsheet attached to the second declaration reflects these revised calculations.

Defendants have moved to strike (ECF No. 106) the spreadsheet as an improper attempt to expand the record after the briefing on the Motion for Summary Judgment had closed. Plaintiff has filed a separate motion for leave to file a sur-reply (ECF No. 110), which Defendants oppose. In the alternative, Plaintiff requested oral argument on the Motion for Summary Judgment, which the Court granted. A motion hearing took place on October 27, 2015, where the Court allowed counsel for the parties to thoroughly argue the issue of the correct calculations.

The Court holds that none of the evidence cited by Plaintiff demonstrates a genuine dispute for trial on the issue of the correct calculation of his imputed earnings and retirement benefits. As a procedural matter, Plaintiff's attempt to introduce new evidence after briefing was closed is not well-taken. According to Plaintiff's second declaration, the spreadsheet showing his calculations had existed for some time and was produced in some form during discovery. As a result, Plaintiff could have filed the exhibit with his response in opposition to the Motion for Summary Judgment. Plaintiff has not explained why he failed to produce the spreadsheet in his response. Although the filing of a sur-reply may be warranted under some circumstances,[93] Plaintiff has not shown that those circumstances are present here. Plaintiff's attempt to introduce the spreadsheet and file a sur-reply simply appears to be his attempt to have the last word on

---

[93] *Modesty v. Shockley*, 434 F. App'x 469, 472 (6th Cir. 2011) (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481–82 (6th Cir. 2003) (holding that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence).

the matter.[94]    As such, Plaintiff has not shown why the filing of a sur-reply would be procedurally proper in this case, particularly now that Plaintiff has had the opportunity to present his position at oral argument.

In any event, excusing Plaintiff's late submission of the spreadsheet, Plaintiff's two declarations and his calculations would not allow a reasonable juror to return a verdict in Plaintiff's favor on the denial of retirement benefits claim.    Putting aside the issue of whether Plaintiff has the expertise to make the calculations himself (and it is by no means clear that he does[95]), Plaintiff has failed to explain the basis for any of his calculations, much less show why his calculations comply with USERRA and FedEx's do not.    Plaintiff has not set forth the formula he used for calculating his imputed earnings or the legal or accounting basis for the assumptions incorporated into his calculations.    For example, the Court reads the spreadsheet to include a 20% adjustment for paid lunches, holiday pay, and overtime compensation as well as a 1% assessment of interest for each quarter.    Plaintiff has not given any explanation for these assumptions or shown why they are required under USERRA or any other generally accepted accounting principle.    Plaintiff has therefore failed to show why his spreadsheet purporting to contain his own calculations creates a triable issue about the correct calculation of his imputed earnings and retirement benefits.    Therefore, the Court finds no genuine dispute over

_____

[94] *In re Enron Corp. Secs .,* 465 F. Supp. 2d 687,691 n.4 (S.D. Tex. 2006) ("Sur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.").

[95] *See* Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.")

whether FedEx has correctly calculated Plaintiff's imputed earnings and whether FedEx's calculations violated USERRA and § 4318.

Plaintiff makes the separate argument that summary judgment would not be appropriate on this claim because FedEx failed to calculate his imputed earnings correctly in the first place, that is, while Plaintiff was still a FedEx employee and was raising the issue of the correct calculation of his retirement benefits. Plaintiff highlights that FedEx added $92,463.50 in imputed earnings to Plaintiff's retirement benefits during the administrative review process before the DOL. In Plaintiff's view, FedEx's after-the-fact revision of its calculations shows that Plaintiff's pre-termination complaints about his retirement benefits had merit and amounts to an admission that FedEx had violated USERRA.

But FedEx's recalculation and upward revision of Plaintiff's imputed earnings during the administrative phase of this dispute does not prove a violation of USERRA. The burden remains with Plaintiff to show that Defendants failed to "allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service."[96] In order to recover against Defendants for an alleged violation of USERRA, Plaintiff must prove "the loss of wages or benefits suffered by reason of [an] employer's failure to comply with [USERRA]."[97] For the reasons already explained, Plaintiff has not discharged this burden. Plaintiff has simply not shown why FedEx's calculations are incorrect and

---

[96] § 4318(b)(1).

[97] § 4323(d)(1)(B).

failed to comply with USERRA.  Therefore, Defendants' Motion for Summary Judgment is **GRANTED** on this claim.

In the absence of a triable issue as to any alleged violation of USERRA, the Court need not reach Plaintiff's claim for liquidated damages.[98]

## CONCLUSION

The Court holds that no genuine issues remain as to Plaintiff's claims that Defendants discriminated and retaliated against him in violation of USERRA, 38 U.S.C. § 4311.  Plaintiff has failed to make out a prima facie case of discrimination or retaliation.  Even if he had done so, Defendants have shown that FedEx would have terminated Plaintiff's employment, regardless of his military service.  Likewise, Plaintiff has failed to carry his burden to prove that Defendants did not correctly calculate his imputed earnings for the periods in which Plaintiff took military leave.  Therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  February 10, 2016.

---

[98] *Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396, 403 (6th Cir. 2008) ("As a threshold matter, courts must find an underlying USERRA violation before they can consider willfulness and the liquidated damages provision.").